**GLEN EDEN HOSPITAL, INC., A Michigan Corporation, Plaintiff-Appellant,**

v.

**BLUE CROSS AND BLUE SHIELD OF MICHIGAN, INC., Defendant-Appellee.**

No. 83–1165.

United States Court of Appeals, Sixth Circuit.

Argued April 2, 1984.

Decided July 16, 1984.

Rita A. McConnell, Robins, Zelle, Larson & Kaplan, James R. Safley (argued), Minneapolis, Minn., Jerome C. Gropman, Dennis Peppler, Gropman & Peppler, Southfield, Mich., for plaintiff-appellant.

Michael T. Zajac, Detroit, Mich., Joshua F. Greenberg (argued), Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendant-appellee.

Before LIVELY, Chief Judge, CONTIE, Circuit Judge, and WEICK, Senior Circuit Judge.

LIVELY, Chief Judge.

The district court granted summary judgment in favor of the defendant, Blue Cross and Blue Shield of Michigan, Inc. (Blue Cross) in this antitrust action. The plaintiff, Glen Eden Hospital, Inc., (Glen Eden) charged Blue Cross with violations of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2 (1976). In granting the defendant's motion for summary judgment the district court applied the "rule of reason" rather than the per se approach to the section 1 claims and held that Glen Eden had not raised a factual issue regarding the existence of a conspiracy or concerted action. With respect to the section 2 claim, the district court held that even if it is assumed that Blue Cross possesses monopoly power, Glen Eden failed to produce any probative evidence that this power had been illegally used. See *Glen Eden Hospital, Inc. v. Blue Cross and Blue Shield of Michigan*, 555 F.Supp. 337 (E.D.Mich.1983).

### I.

We adopt the statement of facts and statement of the case contained in the district court's opinion. 555 F.Supp. at 339–40. Briefly, Glen Eden is a private for-profit psychiatric hospital in Warren, Michigan which has provided services since 1969 to Blue Cross subscribers in return for direct reimbursement by Blue Cross. Until 1979, Glen Eden was considered a "non-participating" hospital because of state law which limited participating status to non-profit hospitals and was reimbursed for its reasonable and customary charges, not to exceed the average per diem payment to "participating" psychiatric hospitals. In

February, 1979, Blue Cross notified Glen Eden it was terminating the 1969 agreement and advised Glen Eden to apply for participating hospital status, the state law having been amended to allow for-profit hospitals to become "participating." Participating hospitals are reimbursed for their reasonable costs plus two per cent under a formula which was adopted in 1948.

When it terminated the 1969 contract, Blue Cross told Glen Eden it would reimburse Glen Eden for services only as a participating hospital under the 102% formula or, alternatively, at a "non-participating" rate of $15 per patient day. Glen Eden ultimately applied for participating hospital status, was accepted, and contracted, though under protest, for reimbursement as a participating hospital.

Also in 1979, Blue Cross informed Glen Eden that it would not reimburse Glen Eden on any basis for services which would be provided at a psychiatric hospital Glen Eden planned to build in Troy, Michigan. It based its refusal on a recently adopted policy which precluded reimbursement for new or expanded psychiatric hospitals when the addition of new beds exceeds a predetermined ratio of beds to the general population in the service area. This policy is referred to as "the psychiatric services policy." Glen Eden abandoned its plans for the new hospital after receiving the notice from Blue Cross.

Glen Eden alleged in its complaint that Blue Cross conspired with other participating hospitals to restrain trade in violation of section 1 of the Sherman Act. It charged that the defendant and the hospitals acted in concert to fix and maintain a non-competitive reimbursement formula and unlawfully refused to deal with it by terminating the 1969 agreement and coercing it into the participating hospital arrangement. It also alleged that a concerted refusal to deal occurred when Blue Cross refused to reimburse for services at the Troy hospital.

Glen Eden's section 2 claims are, first, that Blue Cross, if it acted alone, is a monopolist which abused its monopoly power by refusing to deal with Glen Eden under the 1969 agreement and by refusing to reimburse for services at the Troy facility. Alternatively, it charged a conspiracy to monopolize between Blue Cross and the participating hospitals.

## II.

### A.

The district court determined that the crux of the section 1 claim is that a conspiracy exists between Blue Cross and the participating hospitals under which the large participating hospitals have collectively established a non-competitive reimbursement system and pursuant to which Blue Cross has used coercion and threat of boycott to force Glen Eden to agree to that system. The district court described the reimbursement mechanism as follows:

The reimbursement mechanism involves the operation of a three layer structure. There is, first, a 13 member reimbursement committee which recommends any change in reimbursement policy. Five members of this committee are appointed by the Blue Cross Board of Directors from the consumer membership of its Board of Directors; five members are appointed by the Michigan Hospital Association and are hospital administrators; of the remaining three members, one is appointed by the Governor, one by the Majority Leader of the Michigan Senate, and one by the Speaker of the House of Representatives of the State of Michigan, from lists of nominees supplied by the State Bar Association, the State Association of Certified Public Accountants, the American Association of University Professors, and other similar organizations.

Any change in reimbursement policies must be recommended by an affirmative vote of 8 members of the committee.

That recommendation is then transmitted to the Blue Cross Board of Directors for approval or rejection. That Board consists of 47 members, 27 of whom are

consumer representatives, 19 of whom are provider representatives, and one of whom is the President of Blue Cross.

Finally, a change in the reimbursement policy must be ratified by two-thirds of the number of votes cast by the participating hospitals. The participating hospitals' votes are weighted according to the amount of reimbursement received from Blue Cross during the most recent 12 month period.

555 F.Supp. at 341 (footnote omitted).

The district court concluded that the ability of the participating hospitals to prevent changes in the plan, without more, does not demonstrate concerted action in restraint of trade. Thus the court found that the undisputed facts concerning the reimbursement mechanism do not establish a "structural conspiracy" and that no proof of an actual conspiracy was produced by Glen Eden.

### B.

Glen Eden contends on appeal that it was not given ample opportunity to discover information largely in the possession of Blue Cross and it was error to grant summary judgment on the basis of severely limited discovery. It relies on cases from the Supreme Court and this court which have held that a district court should be cautious about granting summary judgment in complex antitrust cases and that antitrust plaintiffs are to be given considerable latitude when opposing summary judgment. *E.g., Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962) ("We believe that summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot."); *Smith v. Northern Michigan Hospitals, Inc.,* 703 F.2d 942, 948 (6th Cir.1983) ("the court should treat antitrust plaintiffs leniently in examining their proofs ..."). Glen Eden argues that ample discovery would disclose the extent of concerted action by the hospitals in directing the policies of Blue Cross.

Glen Eden also maintains that the district court erred in granting summary judgment, even on the basis of the evidence produced by limited discovery. It argues that the district court should have found that it raised genuine issues of material fact with respect to its claim of section 1 violations, and that the structural control and influence of participating hospitals resulted in a reimbursement policy which was unrelated to the quality of services or the efficiency of operation of Glen Eden and other non-participating hospitals. Glen Eden contends that the district court overlooked the control inherent in the veto power possessed by the participating hospitals as well as the significance of the concerted action required for exercise of the veto power.

Blue Cross contends that Glen Eden conducted substantial discovery and was not able to produce any evidence of a conspiracy or combination between it and the participating hospitals. It argues that the participating hospital agreement is nothing more than a contract between a buyer (Blue Cross) and a seller (an individual hospital). Such a contract is not treated as a vertical restraint on trade, and in the absence of a horizontal conspiracy among the sellers does not offend the antitrust laws. It also argues that, as a matter of law, the participating hospital agreement is not an unlawful price fixing mechanism. The substantial majority of consumer representatives on the reimbursement committee and on the board of directors provides a structural guarantee that the hospitals will not be able to fix prices. The "ratification right" ("veto right" according to Glen Eden) only gives the hospitals power to reject changes, not initiate them. Blue Cross argues that Glen Eden has failed completely to present evidence of provider control over it, and without such control no restraint of trade is possible by use of the participating hospital agreement.

## III.

### A.

■ Though a strict standard for summary judgment is followed in antitrust cases, the provisions of Rule 56, Fed.R. Civ.P., apply as in other cases. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–90, 88 S.Ct. 1575,. 1592–93, 20 L.Ed.2d 569 (1968); *Daily Press, Inc. v. United Press International,* 412 F.2d 126, 128–29 (6th Cir.1969). An antitrust plaintiff faced with a motion for summary judgment "may not rest upon the mere allegations ... of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e). If affidavits are not available, and the party opposing a motion for summary judgment makes this fact known to the court, stating the reasons for their nonavailability, "the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." Rule 56(f).

Glen Eden did not merely rely on the allegations of its complaint in response to the motion for summary judgment. Instead it filed affidavits of several of its attorneys and of its executive director. Glen Eden had deposed two Blue Cross officials and had obtained limited answers to interrogatories and requests for documents in preparation for a ruling on its early motion for a preliminary injunction. Discovery at that time was limited by a district court order. The district court denied the motion for a preliminary injunction and Glen Eden appealed to this court which affirmed the denial in an unpublished order on August 7, 1981. On October 23, 1981, counsel for Glen Eden requested Blue Cross to provide full answers to its previous discovery requests and served Blue Cross with additional interrogatories and document requests. Thus, when Blue Cross filed its motion for summary judgment on November 30, 1981, Glen Eden's renewed discovery requests were pending.

The affidavit of one of Glen Eden's attorneys specified that the plaintiff sought information by discovery as to how and why the 102% formula was adopted in 1948, who was involved, and information with respect to any changes in the formula proposed since 1948. Other information sought related to the method of establishing reimbursement rates and the reason for permitting hospitals to vote on proposed changes. In addition Glen Eden sought information regarding backgrounds and the manner of selection of members of Blue Cross's board of directors and of any committee involved in recommending changes in the reimbursement system. Glen Eden also sought discovery of any communications between the Michigan Hospital Association and Blue Cross regarding the reimbursement system.

### B.

Though the affidavit of the attorney outlined these and other matters on which discovery requests were outstanding, the district court gave no reason for declining to permit further discovery before ruling on the motion for summary judgment. The affidavit of counsel satisfied the requirements of Rule 56(f). It referred to attempted discovery of facts solely within the possession or knowledge of Blue Cross. The information sought by Glen Eden was identified with specificity and was not cumulative. It was directly related to Glen Eden's theory that participating hospitals either controlled or greatly influenced the reimbursement policy of Blue Cross. In particular, it was relevant to Glen Eden's theory that the veto power of participating hospitals over any change in the reimbursement formula had maintained as status quo a system originally adopted by agreement between Blue Cross and participating hospitals and which worked to limit competition from non-participating hospitals by fixing prices at non-competitive rates. Furthermore, the request for information concerning communications between Blue Cross and the Michigan Hospital Associa-

tion related directly to Glen Eden's conspiracy allegations.

 The language of Rule 56(f) makes it discretionary with a trial court whether to deny summary judgment in response to a motion seeking additional discovery. Thus our standard of review is abuse of discretion. *Daily Press, Inc.*, 412 F.2d at 135; 6 Part 2 *Moore's Federal Practice*, ¶ 56.24 at 56–1428 (1982). Blue Cross argues that the renewed requests for discovery were dilatory, that Glen Eden should have continued discovery pending appeal of the district court's denial of the preliminary injunction. The district court had limited discovery to a three-week period before ruling on the motion for a preliminary injunction. Though no new discovery was undertaken while the interlocutory appeal was pending, the depositions of two Blue Cross officials, previously taken, were filed during that period. In his affidavit and in a memorandum opposing summary judgment counsel for Glen Eden pointed to the inadequacy of the discovery previously undertaken and its reasons for awaiting the outcome of the interlocutory appeal before proceeding.

This case is quite different from *First National Bank v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968), where the Court concluded that summary judgment was not prematurely granted. In *First National Bank* summary judgment was granted one of seven defendants sued as conspirators under section 1 of the Sherman Act. The Supreme Court found that after extensive discovery the plaintiff had failed to establish the movant's participation in a conspiracy. In upholding the trial court's refusal to permit additional discovery pursuant to Rule 56(f), the Court wrote, "it is evident that he [the plaintiff] has had sufficient discovery either to substantiate his claims of conspiracy to the extent of raising a material issue of fact thereon, or of providing a basis for investigation of his own to gather additional evidence during the five years for which Cities' motion was pending below." 391 U.S. at 298, 88 S.Ct. at 1597. The same can

not be said for Glen Eden's opportunities in the present case.

### C.

 We conclude that the district court did abuse its discretion in declining to permit Glen Eden to conduct further discovery. Blue Cross had not been extremely forthcoming in response to Glen Eden's requests. The inactivity during the period of the interlocutory appeal did not indicate that Glen Eden had completed its discovery on all the issues in the case. The Rule 56(f) affidavit clearly pointed out the areas in which Glen Eden was seeking further information based on facts within the possession of Blue Cross. Under these circumstances we believe summary judgment was premature with respect to Glen Eden's section 1 claim.

We also conclude that the district court may be required to reconsider its holding that the three-tiered structure of the Michigan Blue Cross reimbursement plan precludes a finding of a "structural conspiracy." Glen Eden argues that the veto power of participating hospitals over any change in the reimbursement formula has significance not recognized by the district court. If Glen Eden can show that the participating hospitals combined with Blue Cross to establish the reimbursement formula in 1948, the ability of the participating hospitals to block any change in the formula would be equally as important as the ability to initiate changes, it contends. It is not clear that the district court considered the review or veto power of the hospitals in this light.

### IV.

Glen Eden's complaint also alleges Blue Cross violated section 1 by using coercion and threat of boycott to force it to accept the reimbursement plan. In addition, it alleges the hospitals conspired with Blue Cross to restrict new competition by influencing Blue Cross to adopt the psychiatric services policy and then refuse to deal with Glen Eden's new Troy hospital in reliance on that policy.

The district court found that the claims of coercion and threat of boycott in the complaint were not buttressed by any probative evidence. Nothing was found to contradict the position of Blue Cross that its decision to terminate the 1969 contract and require Glen Eden to accept the reimbursement scheme based on reasonable cost plus two percent was made unilaterally. The court found it undisputed that Blue Cross never refused to deal with Glen Eden, but only that it insisted on certain terms in the dealings, and that such insistence does not amount to a boycott. Similarly, the district court found that Glen Eden produced no evidence to refute the assertion of Blue Cross that its refusal to certify a facility for Troy, Michigan .was based on a mathematical determination of the number of hospital beds available in the area. Again, there was no showing of any collective action according to the district court.

Glen Eden argues that the evidence of coercion was sufficient to withstand a motion for summary judgment. It contends that its involuntary participation in an anticompetitive scheme satisfies the section 1 requirement of a combination. When Glen Eden balked at signing the participating hospital agreement Blue Cross offered it the alternative of reimbursement at the flat rate of $15 per patient day. This, says Glen Eden, was clearly coercive. Also it argues it has pointed to evidence of communications between Blue Cross and major corporate group subscribers which shows a boycott of Glen Eden was planned. In a similar vein, Glen Eden argues that it produced evidence of concerted action in the refusal of Blue Cross to certify a second facility at Troy, Michigan. It contends that the psychiatric services policy relied upon by Blue Cross in deciding not to certify the facility expressed the desire of participating hospitals to limit competition by discouraging the entry of new hospitals. Again, Glen Eden asserts that further discovery would disclose the full extent of participating hospital influence in formulating this policy.

■ The documented communications between Blue Cross and some of its group subscribers merely show that Blue Cross informed the corporate subscribers of the change in reimbursement for Glen Eden services and that at least one of the corporations in turn requested names of its employee-subscribers who had been Glen Eden patients so that it could inform them of the change. The district court correctly concluded that these documents did not raise a factual inference of the existence of a threatened boycott. Glen Eden has not requested any discovery on this allegation. The fact that Blue Cross offered reimbursement at only $15 per patient day as an alternative to signing the participating hospital agreement also was insufficient to present a genuine issue of unlawful coercion. Absent concerted action or abuse of monopoly power, it is not unlawful to insist on standard terms in commercial dealings. *United States v. Colgate*, 250 U.S. 300, 307, 39 S.Ct. 465, 468, 63 L.Ed. 992 (1919); *Daily Press, Inc.*, 412 F.2d at 135.

However, Glen Eden had requested discovery of how the psychiatric services policy was adopted and whether its competitors were involved in that process. Its requests directed at discovering the backgrounds and manner of selection of members of the board of trustees also relate to its claim that there was a conspiracy to exclude competition from the proposed Troy facility since the board approved the policy. Thus, again the district court was premature in granting summary judgment on this aspect of the section 1 claim.

## V.

The district court found that the parties had not established the relevant market for the purpose of Glen Eden's section 2 claim of monopoly or attempted monopoly. It concluded, however, that even if Blue Cross possesses monopoly power Glen Eden produced no evidence that Blue Cross had acted unlawfully in the acquisition or exercise of such power. The district court pointed out that Blue Cross is neither an actual nor potential competitor of Glen

Eden. The refusal of Blue Cross to give Glen Eden a "special deal" did not enhance the monopoly power of Blue Cross or increase its share of the health care services market. Again, there was no illegal conduct because Blue Cross has always been willing to deal with Glen Eden on the same terms as it does business with other providers.

Glen Eden maintains that statistics in the record show conclusively that Blue Cross does have a monopoly with respect to funding health care services in southeastern Michigan. As with its section 1 claim, Glen Eden argues that it produced enough evidence of unlawful exercise of monopoly power to entitle it to further discovery, and ultimately, to a trial. It contends that the participating hospital agreement and refusal to deal with the Troy hospital enhance Blue Cross's monopoly position and it was error for the district court to find to the contrary. Alternatively, Glen Eden's section 2 arguments are based on the alleged control of Blue Cross by the participating hospitals to increase its monopoly position.

While denying that the record supports Glen Eden's claim that it possessed monopoly power, Blue Cross contends none of its actions vis a vis Glen Eden would be an abuse of a monopolist's position. Even a monopolist can decline to deal with a party who refuses to meet its standard terms and conditions for doing business.

In *Daily Press, Inc. v. United Press International,* 412 F.2d 126 (1969), we held that mere refusal to deal with one who is not a competitor does not constitute an antitrust violation. As Blue Cross notes, *Byars v. Bluff City News Co., Inc.,* 609 F.2d 843 (6th Cir.1979), upon which Glen Eden relies is distinguishable. The plaintiff in *Byars* was a competitor as well as a customer of the defendant who refused to deal.

■ Unlike Glen Eden's section 1 claims, we find the district court did not act prematurely in granting summary judgment with respect to the section 2 claim that Blue Cross possessed and abused monopoly power. The information and documents sought by the renewed requests for discovery all appear to relate to Glen Eden's claim of price fixing or coercion and threat of boycott pursuant to a combination, contract or conspiracy. We agree with the district court that Glen Eden produced no evidence of illegal monopoly or attempt to monopolize and that summary judgment was properly granted with respect to these section 2 claims. In contrast to the specificity with which Glen Eden's counsel described in his affidavits the information and materials related to the section 1 claims sought in additional discovery, the affidavit hardly mentions the section 2 claims. It is difficult to find in the affidavit any support for the conclusion that further discovery would provide evidence of a section 2 violation by Blue Cross acting alone. Even if discovery produced evidence that the hospitals controlled Blue Cross, only a section 1 claim would lie against Blue Cross for conspiracy since Blue Cross does not compete with Glen Eden for market power.

## VI.

■ Upon remand, and after reasonable additional discovery, the district court should reconsider the section 1 claims. In declining to apply a per se analysis the district court distinguished *Arizona v. Maricopa County Medical Society,* 457 U.S. 332, 102 S.Ct. 2466, 73 L.Ed.2d 48 (1982), as a case involving competitors whereas in the present case the hospitals are not competitors of Blue Cross. That distinction exists, and to that extent the present case does differ from *Maricopa County.* Nevertheless, if Glen Eden is able to demonstrate control by other hospitals over the reimbursement payments Blue Cross is willing to offer it, the necessary agreement or conspiracy to fix prices of a competitor will be established. As the Court pointed out in *Maricopa County,* price fixing is unlawful per se and it is wrong for a court to inquire into the reasonableness of fixed prices. 457 U.S. at 350, 102 S.Ct. at 2476. "The anticompetitive potential inherent in all price-fixing agreements justifies their facial invalida-

tion even if procompetitive justifications are offered for some." *Id.* at 351, 102 S.Ct. at 2477 (footnote omitted).

On remand the district court will also have the benefit of two pertinent decisions which were issued after its opinion. In *Monsanto Company v. Spray-Rite Service Corp.,* — U.S. —, 104 S.Ct. 1464, 1469, 79 L.Ed.2d 775 (1984), the Supreme Court affirmed that in distributor termination cases concerted actions to set prices "have been *per se* illegal since the early years of national antitrust enforcement." (Citations omitted). If Glen Eden can establish collaboration between the participating hospitals and Blue Cross on the decision to terminate the 1969 contract and require Glen Eden either to accept the reimbursement formula of the participating hospital agreement or a flat payment of $15 per patient day, that action would appear to be subject to a per se analysis. *Maricopa County* makes clear that any apparent departure from the per se approach to claims of concerted price fixing which may be gleaned from *Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.,* 441 U.S. 1, 99 S.Ct. 1551, 60 L.Ed.2d 1 (1979), is quite limited. The *Broadcast Music* application of the rule of reason is limited to cases where competitors have created a new product for sale by coming together (a blanket license for use of copyrighted compositions by ASCAP members) and where establishing a price is a "necessary consequence" of creation of the product. 457 U.S. at 356, 102 S.Ct. at 2479.

In *Ratino v. Medical Service of the District of Columbia,* 718 F.2d 1260 (4th Cir. 1983), the court of appeals reversed summary judgment for Blue Shield in an action by a non-participating physician who claimed actions of Blue Shield, a county medical society and others constituted a combination in restraint of trade designed to force him and other non-participants to charge "usual, customary and reasonable" rates prescribed by Blue Shield. After discussing the plaintiff's charges that the mechanism for fixing "customary" fees was invalid and that the "provider" agreements between Blue Shield and participating physicians and "peer review" activities, standing alone, constituted illegal price fixing agreements, the court stated:

> We cannot predict whether Ratino will be able to prove these allegations. It no doubt will be difficult, but the scenarios he alleges are not so improbable that he should not have an opportunity to resolve the allegations as primary issues of fact. If the district court finds that in effect the physicians control the customary fee, under *Maricopa* it must find such practice *per se* illegal.

*Id.* at 1271. The same rationale applies to the present case.

### CONCLUSION

The judgment of the district court is affirmed in part and reversed in part and the case is remanded for further proceedings as indicated in this opinion. Glen Eden was entitled to develop further its claims of illegal price fixing by engaging in further discovery. This section 1 claim must be given a per se analysis by the district court. Glen Eden was also entitled to develop further its section 1 claim of concerted refusal to deal as related to the reliance by Blue Cross on the psychiatric services policy in refusing to approve the proposed facility at Troy, Michigan. If Glen Eden produces sufficient evidence of a concerted refusal to deal to go forward with this claim, the district court must then determine whether to treat this claim under a per se or rule of reason analysis. The limited discovery undertaken by Glen Eden, together with its Rule 56(f) affidavits, precluded summary judgment at the time of the district court's decision. We have not discussed the merits of Glen Eden's claims except to the extent required to deal with the summary judgment issue. Obviously, we express no opinion on the merits of issues which we have remanded for further proceedings.

No costs are allowed on this appeal.