**MICHIGAN STATE AFL–CIO, INTERNATIONAL UNION; United Automobile, Aerospace and Agricultural Implement Workers of America (UAW); Metropolitan Detroit AFL–CIO, Se, Plaintiffs,**

v.

**Candice MILLER, Secretary of State, and Frank J. Kelley, Attorney General, Defendants,**

and

**Kalmin Smith, Acting Director, Department of Labor, Supplemental Defendant,**

and

**Michigan Chamber of Commerce, Intervenor–Defendant.**

No. 95–70574.

United States District Court, E.D. Michigan, Southern Division.

March 10, 1998.

Andrew Nickelhoff, Detroit, MI, for Plaintiffs.

John D. Pirich, Gary P. Gordon, Lansing, MI, for Defendants.

*ORDER (1) GRANTING IN PART AND DENYING IN PART INTERVENOR'S MOTION FOR SUMMARY JUDGMENT, (2) DENYING INTERVENOR'S MOTION TO STRIKE PLAINTIFFS' SUPPLEMENTAL BRIEF, (3) GRANTING MOTION TO QUASH SUBPOENA BY MARK HOFFMAN, (4) GRANTING MOTION TO QUASH SUBPOENA BY JACK A. WELLBORN and (5) GRANTING MOTION TO QUASH SUBPOENA BY ALFRED H. HALL*

BORMAN, District Judge.

Before the Court are (1) Intervenor's Motion for Summary Judgment, (2) Intervenor's

Motion to Strike Plaintiffs' Supplemental Brief, (3) Motion to Quash Subpoena by Mark Hoffman, (4) Motion to Quash Subpoena by Jack A. Wellborn, and (5) Motion to Quash Subpoena by Alfred A. Hall. The Court heard argument on December 18, 1997 and has considered all relevant pleadings. For the reasons stated on the record at the hearing, the Court hereby:

(1) GRANTS IN PART AND DENIES IN PART Intervenor's Motion for Summary Judgment;

(2) DENIES Intervenor's Motion to Strike Plaintiffs' Supplemental Brief;

(3) GRANTS Motion to Quash Subpoena by Mark Hoffman;

(4) GRANTS Motion to Quash Subpoena by Jack A. Wellborn; and

(5) GRANTS Motion to Quash Subpoena by Alfred A. Hall.

## I.

Plaintiffs filed a verified complaint for declaratory and injunctive relief on February 16, 1995 in which they requested that this Court declare invalid a portion of Michigan's Campaign Finance Act (MCFA), 1994 P.A. 117, M.C.L.A. §§ 169.201, *et seq.*, or enjoin the Act's implementation. Specifically, the Complaint challenged:

(1) Section 54(1) and (2), which forbids labor organization contributions and independent expenditures with respect to state and local candidates, as unconstitutional under the First and Fourteenth Amendments.

(2) Section 55(4), which restricts soliciting by labor organizations generally and central labor bodies particularly, as unconstitutional under the First and Fourteenth Amendments.

(3) Section 55(4), which restricts soliciting by labor organizations generally and central labor bodies particularly, as unconstitutional under the Equal Protection Clause of the Fourteenth Amendment, vis-a-vis non-profit corporations (such as the Michigan Chamber of Commerce).

(4) Public Act 117 as prohibiting and restricting to unincorporated associations and unincorporated labor organizations but not to other unincorporated entities unconstitutionally under the Equal Protection Clause of the Fourteenth Amendment.

(5) Section 55(5),[1] requiring an affirmative annual consent for individuals' payroll contributions to a labor-sponsored separate, segregated fund, as unconstitutional under the First and Fourteenth Amendments.

(6) Sections 52(11)(b) and (c), which automatically aggregate the contributions and independent expenditures of labor organizations, as unconstitutional under the First and Fourteenth Amendments.

Defendants responded, and the Michigan Chamber of Commerce (the Chamber or Intervenor) sought to intervene. The Court denied the motion to intervene,[2] but allowed the Chamber to participate at oral argument on March 10, 1995.

On March 31, 1995, one day before the 1994 amendments to the MCFA were to become effective, the Court entered an order denying injunctive relief as to § 169.254(1) and granting injunctive relief as to §§ 169.252(9), 169.255(4) and 169.255(6).[3]

In the March 31, 1995 Order, this Court held:

*Section 54(1) and (2):* This Court holds that the MCFA §§ 54(1) & (2) restrictions on labor union expenditures/contributions to state and local political candidates, which mirror state restrictions on corporations, and federal and state restrictions on corporations and labor unions, do not violate the United States Constitution.[4]

---

1. MCL § 169.255(5) was renumbered to § 169.255(6). This Memorandum will refer to this section by its current section number, (6).

2. The Sixth Circuit later reversed this ruling, *Michigan State AFL–CIO v. Miller*, 103 F.3d 1240, 1253 (6th Cir.1997); thus, the Chamber is an intervenor and the movant of this motion.

3. The Court issued a subsequent order, formalizing the March 31 Order, on July 19, 1995.

4. March 31, 1995 Opinion, p. 4.

*Section 55(5)* [5]: This Court holds that in requiring that every individual must reaffirm, annually, an intention to contribute to an SSF, this 55(5) [6] amendment oversteps the limit of legislative control permissible in an area permeated with First Amendment rights and protections.[7]

*Section 55(4):* This Court holds that the language of subsection four unconstitutionally deprives labor unions and their members of their constitutional right to equal protection of the law, because it prevents central labor bodies from exercising their right to political speech by soliciting members of their affiliates, while the Chamber is permitted to solicit stockholders of its "members." [8]

*Section 52(11):* [T]his provision must be held unconstitutional and as an interference with Plaintiffs' right to engage in political free speech. The Court notes, however, that if regulations are put into place by the State to deal with the "affiliate" issue raised in *Sailors,* the provision would then not violate the Constitution.[9]

In sum, the Court denied Plaintiffs' request for a preliminary injunction as to Sections 54(1) and (2) and granted a preliminary injunction as to Sections 52(11), 55(4) and 55(6).

Defendant Michigan Secretary of State appealed, but limited the appeal to a challenge of the preliminary injunction with respect to § 169.255(6).[10] The Sixth Circuit reversed. With respect to the Court's finding that Plaintiffs presented a likelihood of success on the merits, the Court of Appeals held:

> Because we believe that the district court applied the incorrect level of constitutional scrutiny and that plaintiffs have no likelihood of success under the appropriate legal standard, we reverse.

*Michigan State AFL–CIO v. Miller,* 103 F.3d 1240, 1249 (6th Cir.1997).

After analyzing the level of scrutiny applicable, the Sixth Circuit concluded "that the annual affirmative consent provision is content-neutral and that intermediate scrutiny is the appropriate standard of review." *Id.* at 1252. Thereafter, the court found that the annual consent requirement withstands intermediate scrutiny. Thus, "[b]ecause the statute is constitutional, plaintiffs have no likelihood of succeeding with their claim as it relates to § 169.255(6)." *Id.* The court's holding is clear:

> We further hold that Michigan's annual consent provision, § 169.255(6), is a content-neutral law that satisfies the requirements of intermediate scrutiny.

*Id.* at 1253.

Shortly before the Sixth Circuit's decision, this Court vacated the preliminary injunction as to § 160.252(9), which deals with the aggregation of campaign contributions. The Court vacated the preliminary injunction because Defendants promulgated emergency rules which addressed that section's constitutional problems.[11]

Subsequently, Defendant Michigan Secretary of State issued emergency rules regarding implementation of Section 55(6). Plaintiffs then filed suit in Ingham County Circuit Court seeking declaratory and injunctive relief in their challenge of the emergency rules. The Ingham County Circuit Court issued a preliminary injunction which barred application and enforcement of certain rules and interpretive statements issued by the Secretary of State. The Chamber of Commerce also intervened in that action and has filed an appeal of the issuance of the preliminary injunction.

Shortly after the mandate issued in this case, the Intervenor Chamber filed the present Motion for Summary Judgment, in which Defendants join, asserting that there are no genuine questions of material fact remaining

---

**5.** § 169.255(6), as amended.

**6.** § 169.255(6), as amended.

**7.** *Id.* at 13.

**8.** *Id.* at 17.

**9.** *Id.* at 21.

**10.** Subsequently, Michigan amended the MCFA; however, the amendments did not alter any of the language relevant to the issues at bar.

**11.** March 31, 1997 Order Vacating Preliminary Injunction.

because either this Court or the Court of Appeals has addressed all of Plaintiff's claims. Plaintiff responded, relying on Fed. R.Civ.P. 56(f), and contends that the parties need to engage in discovery before the Court can make a final ruling.

Amicus Curiae Michigan Education Association filed a brief in opposition to the motion December 11, 1997 to which the Intervenor replies. Additionally, Plaintiff filed a "Supplemental Brief in Opposition to Motion for Summary Judgment," which the Intervenor moves to strike.

### II.

The Intervenor Chamber first argues that all of Plaintiff's claims have been addressed by either this Court or by the Court of Appeals. Thus, the Intervenor Chamber argues that Plaintiffs' complaint is moot and must be dismissed.

In response, Plaintiffs' central argument is that the motion should be denied because there has been no discovery in this case, and upon a proper request pursuant to Fed. R.Civ.P. 56(f), a motion for summary judgment should be denied or continued. Plaintiffs further argue that the Court should "explore the issues raised by the ruling on appeal, but only after necessary discovery and development of a factual record." [12] Plaintiffs contend that simply because there was not a factual record before the Court at the preliminary injunction stage does not preclude developing one now.

In response to the Intervenor's assertion that all issues in this case have been resolved, Plaintiffs contend that two salient issues remain: (1) The Sixth Circuit's discussion of the appropriate level of scrutiny to be applied "entails a closer examination of the legislative purpose." [13] Thus, evidence regarding the legislative purpose of the MCFA is necessary to the final determination of the constitutionality of § 55(6).(2) When the Sixth Circuit weighed the third factor in its intermediate scrutiny analysis—the burden placed on Plaintiffs to comply—it did not have the benefit of an evidentiary record.

Thus, evidence regarding the burden placed on Plaintiffs to comply is necessary to the final determination of this issue.

Amicus Curiae Michigan Education Association (MEA) filed a brief opposing the Intervenor's motion for largely the same reasons as Plaintiffs. The MEA's main argument is that the burdens imposed by Section 55(6) must be evaluated before this Court can make a final determination of the constitutionality of that section.

### III.

The Sixth Circuit held that Section 55(6) must be analyzed under the constitutional doctrine of intermediate scrutiny. Plaintiffs, describing the Sixth Circuit's holding as preliminary, would have this Court consider the MCFA's legislative history and other documents to ascertain the true purpose behind enactment of the MCFA's amendments and thereafter hold that the statute is an unconstitutional restriction on protected speech. The Court rejects this invitation for several reasons.

First, when a legal issue has been determined after an interlocutory appeal, the reviewing court's decision is the law of the case. *Royal Ins. Co. of America v. Quinn–L Capital Corp.*, 3 F.3d 877, 881 (5th Cir.1993) (citing 1B JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 0.404[.4–7], at II–37 (2d ed.1993)). Therefore, the Court cannot review or overrule what the Sixth Circuit has held in this case. Moreover, after conclusion of this case, if a party appeals, the Sixth Circuit is also bound by its prior decision. In reviewing what a district court did following a remand, the Sixth Circuit outlined its inquiry:

> In deciding whether the District Court properly followed our directions on remand, we consider whether it properly interpreted our mandate, whether it fully carried out required procedures, and whether its factual findings were clearly erroneous.

*Hawkes v. Internal Revenue Service*, 507 F.2d 481, 482 (6th Cir.1974). The Sixth Cir-

---

12. Plaintiffs' Brief, p. 5.

13. Plaintiffs' Brief, p. 5.

cuit also noted that, "[e]xcept for the intervention of new statutory or Supreme Court decisional law, our mandate to the District Court and the accompanying opinion constitute 'the law of the case,' and we will not review the correctness of our prior decision." *Id.*, fn. 1.

In this case, the Sixth Circuit's holding is clear:

> We further hold that Michigan's annual consent provision, § 169.255(6), is a content-neutral law that satisfies the requirements of intermediate scrutiny.

*Michigan State AFL–CIO,* 103 F.3d at 1253. The Sixth Circuit's mandate is equally clear:

> Accordingly, we reverse the district court's orders ... holding § 169.255(6) unconstitutional, we vacate the district court's preliminary injunction insofar as it applies to § 169.255(6), and we remand for further proceedings.

*Id.*

Plaintiffs' argument that this holding leaves room for the Court to order discovery and allow presentation of additional evidence in support of its position—that the purpose behind the MCFA's amendments was to suppress political speech—is without merit. Moreover, the cases on which Plaintiffs rely in support of this position are distinguishable.

In *Glen Eden Hospital v. Blue Cross & Blue Shield of Michigan,* 740 F.2d 423 (6th Cir.1984), an antitrust case, the Sixth Circuit reversed the district court's grant of summary judgment for defendant. Plaintiff had made a Rule 56(f) request for additional discovery and complained that discovery had been severely limited. In so reversing, the court found that the district court erred because plaintiff complied with Rule 56(f). *Id.* at 428, 431. However, *Glen Eden Hospital* was not a declaratory judgment action, there was no injunction at issue, and there was not a prior ruling on an interlocutory appeal. Accordingly, the concerns implicated by the case at bar are completely different from those at issue in *Glen Eden Hospital.*

In another case relied on by Plaintiffs, the Sixth Circuit reversed and remanded the district court's grant of summary judgment because of the district court's incorrect application of the law of the case doctrine. *William G. Wilcox, D.O., P.C. Employees' Pen. Tr. v. U.S.,* 888 F.2d 1111 (6th Cir.1989). In *Wilcox,* plaintiff filed a motion for preliminary injunction, which was denied based on a report and recommendation filed by the magistrate judge. Defendant moved for summary judgment, which the district court granted finding that the magistrate judge's recommendation denying the preliminary injunction, as adopted by the district court, was dispositive of the motion for summary judgment because it was the law of the case. On appeal, the Sixth Circuit found it was error to call denial of a preliminary injunction the law of the case. *Id.* at 1114. The difference between *Wilcox* and this case is that the prior decision relied upon is not from a magistrate judge's recommendation, but a decision by the Sixth Circuit which held that the statute at issue is constitutional. Again, *Wilcox* was not a declaratory judgment action; rather, it was a case regarding the seizure of a taxpayer's assets which needed considerably more factual development than it was afforded.

The third case on which Plaintiffs rely is *Farmer v. Brennan,* 81 F.3d 1444 (7th Cir. 1996), a Seventh Circuit prisoner civil rights case. In *Farmer,* the district court entered judgment for the prison officials, which was affirmed by the Seventh Circuit. The Supreme Court vacated and remanded; the court of appeals did the same. When the district court proceeded after remand, it quickly granted another motion for summary judgment filed by defendants, ignored plaintiff's request for discovery, yet chastised the prisoner plaintiff for not responding to the motion in a timely manner. On appeal, the Seventh Circuit held that the district court abused its discretion in entering summary judgment shortly after remand without considering the prisoner's efforts to obtain discovery to respond to the motion for summary judgment. *Id.* at 1450–51. The court of appeals particularly was concerned about the lack of attention given the prisoner's requests for discovery. Again, this was not a declaratory judgment action seeking a declaration that a statute is or is not constitution-

al; rather *Farmer* was a prisoner civil rights case, in which factual development is crucial.

More procedurally relevant to the instant case is *Royal Ins. Co. of America v. Quinn–L Capital Corp.*, 3 F.3d 877 (5th Cir.1993), in which the plaintiff insurer received a declaratory judgment of no coverage regarding securities claims filed by investors against the insurers. Subsequently, the insurers sought to enjoin state court actions in which the investors sought to enforce against the insurers a state court judgment. The district court entered a preliminary injunction against the investors, who appealed. The court of appeals reversed in part and affirmed in part and remanded. On remand, after the district court granted summary judgment for the insurer; the investors again appealed. The Fifth Circuit held that the district court did not err in granting summary judgment because in an interlocutory appeal, the court of appeal's decision of law was the law of the case. *Royal Ins. Co.*, 3 F.3d at 881.

Similarly, the Sixth Circuit recognized that under the law of the case doctrine, "a decision on an issue made by a court at one stage of a case should be given effect in successive stages of the same litigation." *United States v. Todd*, 920 F.2d 399, 404 (6th Cir.1990).[14] Although *Todd* is a criminal case, Circuit Judge Cornelia Kennedy analogized to the law of the case doctrine as applied in the civil context before finding that the doctrine applies in the criminal context as well where a coordinate court makes a ruling and then a second court looks at the original ruling. *Todd's* holding echoes the Sixth Circuit's holding in *Hawkes*

Against all of this background, the Court now turns to evaluating the Intervenor's motion under the appropriate summary judgment standard. Under Fed.R.Civ.P. 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir.1995). A fact is "mate-

rial" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defenses asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984). The court must view the evidence in the light most favorable to the nonmoving party, and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir.1995).

Plaintiff's assertion that a material fact question remains regarding the legislative purpose behind the MCFA amendments is without support in fact or in law. Not only has the Sixth Circuit made it clear that the statute is content-neutral, Plaintiffs ignore Supreme Court precedent in a First Amendment case which directs what emphasis courts should place on congressional motives:

Inquiries into congressional motives or purposes are a hazardous matter. When the issue is simply the interpretation of legislation, the Court will look to statements by legislators for guidance as to the purpose of the legislature, because the benefit to sound decision-making in this circumstance is thought sufficient to risk the possibility of misreading Congress' purpose. It is entirely a different matter when we are asked to void a statute that is, under well-settled criteria, constitutional on its face, on the basis of what fewer than a handful of Congressmen said about it. What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork. We decline to void essentially the ground that it is unwise legislation which Congress had the undoubted power to enact and which could be reenacted in its exact form if the same or another legislator made a "wise" speech about it.

*United States v. O'Brien*, 391 U.S. 367, 383–84, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

---

14. The Intervenor relies on *Todd*.

The Sixth Circuit has concluded discussion of the matter: Section 55(6) is constitutional; additional discovery regarding the purported purpose behind it is irrelevant, and to the extent it was relevant, has been deemed a non-issue:

> that Michigan has evidenced concern about political contributions rather than all contributions of individuals as groups involved does not subject this statute to strict scrutiny.

*Michigan AFL–CIO,* 103 F.3d at 1252. As to this issue, therefore, the Court grants Intervenor's motion.

As to the issue of whether Section 55(6) is unconstitutionally burdensome under intermediate scrutiny analysis, the Court denies the motion at this time. This issue was decided by the Sixth Circuit in *Michigan State v. AFL–CIO,* but without the benefit of an evidentiary record:

> The third and final criterion is that the law not "burden substantially more speech than is necessary." While plaintiffs and amicus curiae, the Michigan Education Association, suggest that the administrative burden of the annual consent provision will be crushing, they offer no support for that claim.

*Michigan State AFL–CIO,* 103 F.3d at 1253. Plaintiffs note that no discovery had occurred as to whether compliance was unduly burdensome. Before this Court is the affidavit of Ken MacGregor,[15] a political consultant to the Michigan Education Association, wherein he attests to what efforts have been made to comply with the MCFA, as amended. Specifically, he states that "more than 2,900 MEA staff hours have been expended in the development and implementation of the process for obtaining PAC contributions."[16] In addition to using staff, MEA hired part-time coordinators "to assist in training volunteers and discussing PAC fund raising efforts with our members. Approximately 46 part-time coordinators were hired to assist in this task, at a total cost of $100,000."[17] This affidavit raises a question of fact as to the effect of compliance. Thus, the Court will allow limited discovery on this issue only.

---

**15.** MacGregor Affidavit, ¶ 10.

**16.** MacGregor Affidavit, ¶ 10.

*IV.*

Based on the foregoing, the Court GRANTS IN PART AND DENIES IN PART THE INTERVENOR'S MOTION FOR SUMMARY JUDGMENT as follows:

(1) Plaintiffs' request for a permanent injunction as to Sections 54(1) and (2) is DENIED with prejudice;

(2) Plaintiffs' request for a permanent injunction as to Section 55(6) is GRANTED IN PART AND DENIED IN PART, as provided above;

(3) Plaintiffs' request for a permanent injunction as to Section 52(10)(b) and (c) is DENIED with prejudice; and

(4) Plaintiffs' request for a permanent injunction as to Section 55(4) is GRANTED.

As stated above, IT IS FURTHER ORDERED that Intervenor's Motion to Strike Plaintiffs' Supplemental Brief is DENIED.

IT IS FURTHER ORDERED that the three Motions to Quash Subpoenas by Mark Hoffman, Jack Wellborn and Alfred A. Hall are GRANTED.

SO ORDERED.