*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0053p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

STEPHEN EGERER, et al.,
　　　　　　　　　*Plaintiffs-Appellants,*

　　*v.*

WOODLAND REALTY, INC., et al.,
　　　　　　　　　*Defendants-Appellees.*

No. 08-1173

─────────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 06-00789—Richard A. Enslen, District Judge.

Argued: October 29, 2008

Decided and Filed: February 12, 2009

Before: MARTIN and GILMAN, Circuit Judges; DOWD, Senior District Judge.[*]

─────────────────

## COUNSEL

**ARGUED:** Michael W. Basil, CLAUSEN MILLER, Chicago, Illinois, for Appellants. Brian J. Masternak, WARNER, NORCROSS & JUDD, Grand Rapids, Michigan, for Appellees. **ON BRIEF:** Michael W. Basil, CLAUSEN MILLER, Chicago, Illinois, for Appellants. Brian J. Masternak, Sarah Riley Howard, WARNER, NORCROSS & JUDD, Grand Rapids, Michigan, for Appellees.

─────────────────

## OPINION

─────────────────

DOWD, Senior District Judge. Plaintiffs Stephen Egerer, Stephanie Egerer, and Kathy Boyink brought this putative class action suit against defendants Woodland Realty, Inc., Woodland Title Agency, LLC, Chicago Title Insurance Company, and

─────────────────

[*] The Honorable David D. Dowd, Jr., Senior United States District Judge for the Northern District of Ohio, sitting by designation.

Chicago Title of Michigan, Inc., alleging that defendants violated the Real Estate Settlement and Procedures Act of 1974, 12 U.S.C. § 2601, *et seq.* ("RESPA"), by paying and receiving unlawful referral fees for title insurance business. The district court granted summary judgment in favor of the defendants and the plaintiffs now appeal. For the reasons set forth below, we affirm the judgment of the district court.

## I. Factual Background

Plaintiffs Stephen and Stephanie Egerer sold their home in Michigan with the assistance of defendant Woodland Realty, Inc. ("Woodland Realty"). The Woodland Realty agent who sold the Egerers' home, Pat Siler ("Siler"), was a relative of the Egerers. Defendant Woodland Title Agency, LLC ("Woodland Title"), performed the settlement services to complete the sale, which took place on June 14, 2004. Before Woodland Title completed the transaction, Siler provided the Egerers with an "Affiliated Business Arrangement Disclosure Statement" ("Disclosure") (J.A. at 74). The Disclosure, acknowledged and signed by the Egerers on April 4, 2004, stated that: 1) the Egerers were "welcome to shop around" and not required to use Woodland Title for their real estate settlement services;[1] 2) Woodland Realty had a business relationship with Woodland Title; and 3) because of that business relationship, Woodland Realty may receive a "financial or other benefit" for referring clients to Woodland Title. The specific nature of that benefit was not contained in the Disclosure, but the actual benefit received by a Woodland Realty agent from Woodland Title was a $15 credit in the form of Woodland Title "Marketing Dollars," which could be used by the agent to offset marketing or promotional expenses ("Marketing Dollars Program"). In addition, the Disclosure estimated the cost of title insurance to be $330 for a $50,000 title insurance owner policy. The actual cost of title insurance was $350.

---

[1] Stephen Egerer testified at his deposition that neither he nor Stephanie Egerer chose to shop around for title insurance for a variety of personal reasons. (J.A. at 264).

Plaintiff Kathy Boyink ("Boyink")[2] purchased a home in Michigan that was listed for sale by Woodland Realty. In purchasing her home, Boyink utilized a buyer's agent. Boyink's buyer's agent was Heidi Parsons ("Parsons"), who was a long-time friend and an agent with Prins Real Estate.[3] Boyink followed Parsons's recommendation and engaged defendants for the necessary settlement services, which were completed for the purchase of her home on October 6, 2005. Parsons and Prins Real Estate had no relationship with Woodland Realty, Woodland Title or Chicago Title, and are not defendants in this case.

## II. Procedural Background

Plaintiffs' amended complaint contends that Woodland Title's Marketing Dollars Program constitutes an unlawful fee, kickback, or thing of value in violation of RESPA. As a consequence, plaintiffs allege that they paid more for settlement services than they would otherwise have paid. Defendants dispute that the Marketing Dollars Program violates RESPA or increased the cost of title insurance to the plaintiffs.

After plaintiffs filed their amended complaint, defendants moved to dismiss and/or for summary judgment on plaintiffs' RESPA claim and state-law claim.[4] Defendants argued that plaintiffs' RESPA claim fails because: 1) the Egerers' claims were filed outside of the statute of limitations; 2) Boyink was not referred to defendants for settlement services by any of the defendants and therefore cannot maintain a claim

---

[2] Kathy Boyink was added as a plaintiff in the amended complaint filed on February 27, 2007, along with defendants Chicago Title Insurance Company and Chicago Title of Michigan, Inc. (collectively, "Chicago Title"). The original complaint was filed by Stephen and Stephanie Egerer on September 29, 2006, in the Circuit Court of Muskegon County, Michigan against Woodland Realty and Woodland Title. Woodland Realty and Woodland Title removed the case to the United States District Court for the Western District of Michigan on November 2, 2006, on the grounds that plaintiffs' RESPA claim conferred federal question jurisdiction on the district court pursuant to 28 U.S.C. § 1331. In addition to claiming a RESPA violation, plaintiffs also asserted a state-law claim for violation of Michigan's Consumer Protection Act, MCL § 445.903(1) *et seq*.

[3] Boyink Dep. pp. 6:25 to 7:5 (J.A. at 259).

[4] Cross motions for judgment were pending before plaintiffs amended their complaint. However, the district court denied those motions without prejudice to renew after the appearance of all parties joined in the amended complaint.

against them for violating § 2607(a); and 3) plaintiffs have not adequately alleged an actual "injury in fact" as a result of the Marketing Dollars Program.[5]

Plaintiffs opposed defendants' motion on the merits and filed their own motion for judgment on the pleadings. Plaintiffs argued they were entitled to judgment on the pleadings because the Marketing Dollars Program is an unlawful referral fee concealed from plaintiffs in violation of RESPA. Because of those fees, plaintiffs contend that they paid more for settlement services. Alternatively, plaintiffs argued that if the district court was not persuaded that judgment should be entered in their favor, the district court should allow plaintiffs additional time to conduct discovery before deciding defendants' motion.

Because the parties' motions presented information and documents outside of the pleadings, the district court analyzed the motions pursuant to Fed.R.Civ.P. 56. Based on this analysis, the district court granted defendants' motion as to plaintiffs' federal RESPA claim, denied plaintiffs' motion for judgment on the pleadings, and remanded plaintiffs' state-law claim. Plaintiffs moved for reconsideration, which was denied by the district court, and plaintiffs filed a timely appeal.

## III. LAW AND ANALYSIS

### A.    Standard of Review

A district court's order granting summary judgment is reviewed *de novo*. *Brannam v. Huntington Mortgage Co.,* 287 F.3d 601, 603 (6th Cir. 2002) (citing *Taylor v. Michigan Dept. of Corrections,* 69 F.3d 76 (6th Cir. 1995); *Lake v. Metropolitan Life Ins. Co.,* 73 F.3d 1372, 1376 (6th Cir. 1995)). When reviewing the district court's decision granting summary judgment, we view all evidence in the light most favorable to the non-moving party. Summary judgment is proper when no genuine issue of

_____

[5] Defendants' "injury-in-fact" argument in support of summary judgment was not addressed by the district court because judgment was granted on other grounds, and we likewise find it unnecessary to address that issue in this case. However, the question of whether a plaintiff must allege a concrete injury, such as an overcharge, in order to have standing to sue for a RESPA violation was very recently addressed by this Court in *Carter, et al. v. Welles-Bowen Realty, et al.,* No. 07-3965, 2009 WL 151319 (6th Cir. Jan. 23, 2009).

material fact exists and the moving party is entitled to judgment as a matter of law. *Kleiber v. Honda of Am. Mfg.,* 485 F.3d 862, 868 (6th Cir. 2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

**B.     Real Estate Settlement and Procedures Act of 1974, 12 U.S.C. § 2601, *et seq.***

Count I of plaintiffs' first amended complaint alleges that defendants violated RESPA by "paying or accepting referral fees and other things of value in connection with the referral of real estate settlement services work to Woodland Title for Mr. & Mrs. Egerer [&] Ms. Boyink." (J.A. at 36-37).

12 U.S.C. § 2607 prohibits kickbacks and unearned fees. In particular, § 2607(a) provides in relevant part:

> No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service . . . shall be referred to any person.

Under RESPA, the referral of settlement service business is not compensable, except as provided by 12 U.S.C. § 2607(c), which contains a list of fees, salaries, compensation and payments that are not prohibited by § 2607(a).[6]  A "referral" is defined by 24 C.F.R. § 3500.14(f) as follows:

> (1)     A referral includes any oral or written action directed to a person which has the effect of affirmatively influencing the selection by any person of a provider of a settlement service or business incident to or part of a settlement service when such person will pay for such settlement service or business incident thereto or pay a charge attributable in whole or in part to such settlement service or business.

Claims pursuant to § 2607(a) must be brought within one year from the date the violation occurs in accordance with 12 U.S.C. § 2614, which provides in relevant part:

> Any action pursuant to the provisions of section . . . 2607 . . . of this title may be brought  . . . within . . . 1 year in the case of a violation of section 2607 . . . from the date of the occurrence of the violation . . . .

---

[6] *See also* 24 C.F.R. § 3500.14(g)(1).

### C.     Egerers' RESPA Claims

### 1.     Plaintiffs are not Entitled to Equitable Tolling of RESPA Statute of Limitations

The plaintiffs, Stephen and Stephanie Egerer, concede that their RESPA claims are outside of the one-year statute of limitations.[7]   However, they argue that RESPA's statute of limitations is subject to the doctrines of equitable tolling and estoppel, and that they have both alleged and provided evidence sufficient to support the application of these doctrines and are entitled to more discovery to develop additional supporting evidence.  Plaintiffs claim that they are entitled to equitable tolling because defendants concealed and misled them regarding the defendants' business relationship, the Marketing Dollars Program, and true cost of title insurance, all of which could not have been reasonably discovered.

The district court recognized that this Court has not yet ruled on the question of whether the RESPA statute of limitations is subject to equitable tolling.  However, based on an analysis of *Young v. United States,* 535 U.S. 43 (2002),[8] *Jones v. TransOhio Sav. Ass'n,* 747 F.2d 1037 (6th Cir. 1984),[9] and other courts that have held that RESPA's statute of limitations is subject to equitable tolling,[10] Judge Enslen concluded that equitable tolling is available to RESPA plaintiffs.

---

[7] The one year period begins to run "from the date of the occurrence of the violation."  The Egerers completed the sale of their home on June 14, 2004.  The original state court class action complaint was filed by the Egerers on September 29, 2006 - more than twenty-seven months after the sale of their home.

[8] "It is hornbook law that limitations periods are customarily subject to equitable tolling, unless tolling would be inconsistent with the text of the relevant statute.  Congress must be presumed to draft limitations periods in light of this background principle." *Young,* 535 U.S. at 49.

[9] Judge Enslen reasoned that, although the Sixth Circuit has not ruled on the RESPA issue, "it has ruled that the similarly worded Truth in Lending Act is subject to equitable tolling. *Jones v. TransOhio Sav. Ass'n,* 747 F.2d 1037, 1041 (6th Cir 1984)." (J.A. at 48, fn. 7).

[10] *Lawyers Title Ins. Corp. v. Dearborn Title Corp.*, 118 F.3d 1157, 1166-67 (7th Cir. 1997); *Boudin v. Residential Essentials, LLC*, No. 07-0018-WS-C, 2007 WL 2023466, at *4 (S.D. Ala. July 10, 2007); *Carr v. Home Tech Co., Inc.*, 476 F. Supp. 2d 859, 869 (W.D. Tenn. 2007); *Mullinax v. Radian Guar. Inc.*, 199 F. Supp. 2d 311, 328 (M.D.N.C. 2002); *Pedraza v. United Guar. Corp.*, 114 F. Supp. 2d 1347, 1353 (S.D. Ga. 2000); *Kerby v. Mortg. Funding Corp.*, 992 F. Supp. 787, 793-96 (D. Md. 1998); *Moll v. United States Title Ins. Co.*, 700 F. Supp. 1284, 1286-89 (S.D.N.Y. 1988).

The district court then considered whether equitable tolling was appropriately applied in this case to toll the RESPA statute of limitations. After considering the five factors identified by *Truitt v. County of Wayne*[11] and the doctrine of fraudulent concealment as described in *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*,[12] Judge Enslen determined that it was not appropriate to equitably toll the Egerers' RESPA claims in this case. Accordingly, the district court dismissed the Egerers' RESPA claims as time barred by 12 U.S.C. § 2614 without reaching the merits.

In order to establish equitable tolling by the doctrine of fraudulent concealment, the plaintiffs must allege and establish that: 1) defendants concealed the conduct that constitutes the cause of action; 2) defendants' concealment prevented plaintiffs from discovering the cause of action within the limitations period; and 3) until discovery, plaintiffs exercised due diligence in trying to find out about the cause of action. *Pinney Dock,* 838 F.2d at 1465 (citing *Dayco Corp. v. Goodyear Tire & Rubber Co.,* 523 F.2d 389, 394 (6th Cir. 1975)); *see also Jarrett v. Kassel,* 972 F.2d 1415, 1423 (6th Cir. 1992); *Mills v. Equicredit Corp.,* 294 F.Supp.2d 903, 908 (E.D. Mich. 2003).

### a.     *Defendants did not take affirmative steps to conceal plaintiffs' cause of action*

The record does not support a finding that defendants affirmatively concealed conduct that allegedly violates RESPA. In fact, the Disclosure, which was presented to and signed by the Egerer plaintiffs, clearly stated that a business relationship existed between Woodland Realty and Woodland Title, and that Woodland Realty may receive a "financial or other benefit" as a result of referring plaintiffs to Woodland Title for settlement services. In addition, the Disclosure identified the $330 title insurance fee as "estimated." Defendants did not affirmatively conceal the business relationship,

---

[11] 148 F.3d 644 (6th Cir. 1998). In *Truitt*, this Court identified five factors to determine whether equitable tolling of a statute of limitations is appropriate. These factors are: 1) lack of notice of the filing requirement; 2) lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendants; and 5) plaintiff's reasonableness in remaining ignorant of the particular legal requirement. *Truitt,* 148 F.3d at 648 (citing *Andrews v. Orr,* 851 F.2d 146, 151 (6th Cir. 1988)).

[12] 838 F.2d 1445 (6th Cir. 1988).

Marketing Dollars Program, or actual cost of title insurance from the Egerers. These basic facts, which now support plaintiffs' RESPA cause of action, were disclosed - not concealed - by defendants.

Additionally, plaintiffs argue that defendants affirmatively concealed plaintiffs' cause of action because defendants did not bring potential legal claims to their attention, and cited *Veltri v. Building Service 32B-J Pension Fund*[13] to the district court in support of this proposition. However, plaintiffs' reliance on *Veltri* is misplaced.

*Veltri* involved an untimely appeal regarding pension benefits, which plaintiff alleged was due to the ERISA plan administrator's failure to properly notify him of his right to appeal. In that case, the applicable Code of Regulations *required* that Veltri be notified of his right to file both an administrative appeal and a civil action in court challenging an adverse benefits determination. *Veltri*, 393 F.3d at 323. The *Veltri* court found that "defendants did nothing that even approached compliance with the *requirement* that they inform Veltri of his right to file an action in court,"[14] and held that the statute of limitations for filing an action in court to challenge the denial of his benefits claim was equitably tolled because the pension fund failed to notify him of his right to do so.

However, the *Veltri* court was clear in holding that the pension fund's failure to inform Veltri of his right to file an action in court resulted in equitable tolling of the statute only because of the regulatory notice requirement and Congress's express policy favoring placement of the burden of disclosure on pension plans and protecting the interest of pension plan participants.[15] In this case, there is no requirement that

---

[13] 393 F.3d 318 (2nd Cir. 2004).

[14] *Veltri*, 393 F.3d at 323 (emphasis added).

[15] *See Veltri,* 393 F.3d at 324:

While the Fund's *failure to inform Veltri of his right to file an action in court challenging its denial of benefits for his pre-1970 services is not the kind of concealing activity that would normally be held to mandate equitable tolling*, the Fund's nondisclosure must be viewed in light of the regulatory notice requirement and of Congress's policy of protecting the interests of pension plan participants by ensuring disclosure and reporting to participants and ready access to the Federal courts.

defendants inform plaintiffs that they may have a legal claim because of defendants' business relationship, the Marketing Dollars Program, or because the actual cost of title insurance may vary from the estimated cost, and defendants' failure to do so is not the type of concealing activity that normally justifies equitable tolling.

Construing the facts in a light most favorable to plaintiffs, we find that defendants did not affirmatively conceal plaintiffs' RESPA cause of action and were not required to inform plaintiffs that they may have a cause of action. Therefore, we conclude that plaintiffs have not established the first prong of fraudulent concealment.

### b.     *Plaintiffs did not exercise due diligence to discover a cause of action*

The Disclosure acknowledged and signed by the Egerers clearly stated that: 1) a business relationship existed between Woodland Realty and Woodland Title; 2) Woodland Realty may receive a financial or other benefit for referring business to Woodland Title; and 3) the cost of title insurance was "estimated." However, the Egerers did not inquire of their real estate agent or anyone else as to the particulars of the business relationship, the financial benefit, or the actual cost of title insurance.

In an effort to establish that due diligence on their part would have been futile, plaintiffs assert that Mr. Bouman ("Bouman"), an owner and officer of Woodland Realty and Woodland Title, testified that the $15 marketing credit would not have been disclosed to customers even if they had asked. However, Bouman's testimony does not actually support that assertion.[16]

---

(Emphasis added) (internal citations and quotation marks omitted).

[16] Q. If a prospective customer comes into Woodland Title and says, "before I agree to close with Woodland Title, I need to see all of the detailed paperwork dollar by dollar, payment by payment, for all of your marketing, advertising, and promotional expenditures, before I'll agree to close with you over a competition down the street," it's your understanding that Woodland Title would say, "no thanks, we're not going to give you that information to earn your business?"
Q. Would you agree with me, sir?
A. I would find that inquiry to be very unusual but I cannot say how I would answer that question, because it is a very unusual question coming from a consumer . . . and I'm not sure that it would be in our interest, to hand out my operating statements to a consumer . . . [s]o I would say that in a general sense my answer would maybe more in a question form, what is it that you're interested in the material for . . . .

Similarly, plaintiffs assert that Bouman testified it was misleading for Woodland Realty to print an estimate of $330 for title insurance on the disclosure if the actual filed rate submitted by Chicago Title to the State of Michigan was higher. Once again, Bouman's testimony does not support that assertion.[17] Perhaps more importantly, the rates charged by all title insurers must be filed with the State of Michigan and are publicly available. (J.A. at 75-76).

Construing the facts in a light most favorable to plaintiffs, we find that the plaintiffs did not exercise due diligence and would not have been prevented by defendants from discovering their RESPA cause of action had they exercised due diligence. Therefore, we conclude that plaintiffs have not established the second prong of fraudulent concealment.

As the district court noted, we have not yet ruled on the question of whether the RESPA statute of limitations is subject to equitable tolling. However, if the statute of limitations in RESPA were subject to equitable tolling, the propriety of equitable tolling is determined on a case-by-case basis and is to be narrowly applied. *See Truitt v. County of Wayne,* 148 F.3d at 648; *Hill v. United States Department of Labor,* 65 F.3d 1331, 1336 (6th Cir. 1995). We conclude, like the district court, that equitable tolling should not be applied to toll the statute of limitations on these facts, and affirm the district court in granting summary judgment to defendants.[18]

---

Bouman Dep. pp. 54:9 to 55:20 (J.A. at 200).

[17] Q. And if the rate Chicago Title has filed with the State of Michigan for $50,000 in owner's coverage effective for the time of this disclosure is actually $350, not the $330 listed on the disclosure, you would agree that this disclosure misleads the customer and their ability to shop the services around.
A. I would agree that if the $330 is an inaccurate figure based on the cost of $50,000 owner policy of title insurance, that the word "estimated" would be inserted in there in the event that there had been some change in the structure of charges in the interim of this document, and, second, I don't know whether this document is specific or example.

Bouman Dep. pp. 39:8 to 40:6 (J.A. at 196).

[18] Because plaintiffs cannot prevail on their tolling argument even assuming that the RESPA statute of limitations were subject to equitable tolling, it is not necessary to decide that question in this case.

## 2.        Plaintiffs are not Entitled to Equitable Estoppel

Plaintiffs also assert that the district court erred by not considering the doctrine of equitable estoppel with respect to the RESPA statute of limitations. Plaintiffs contend that had the district court construed the facts in the light most favorable to plaintiffs, those facts would have supported both the doctrines of equitable estoppel and equitable tolling.

Unlike equitable tolling, which requires concealment of plaintiffs' cause of action, equitable estoppel applies when plaintiffs are aware of their claims but defendants' conduct prevents plaintiffs from timely filing suit. When this occurs, defendants are estopped from asserting the statute of limitations as a bar to plaintiffs' lawsuit.

The elements of an equitable estoppel claim are set forth in *Sprague v. General Motors Corp.*[19] as follows:

> 1) there must be conduct or language amounting to a representation of a material fact; 2) the party to be estopped must be aware of the true facts; 3) the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends; 4) the party asserting the estoppel must be unaware of the true facts; and 5) the party asserting the estoppel must reasonably or justifiably rely on the representation to his detriment.

Like equitable tolling, equitable estoppel requires affirmative steps or action on the part of a defendant. Plaintiffs must have reasonably relied on defendants' affirmative conduct in failing to file suit within the statute of limitations. Also, like equitable tolling, plaintiffs invoking equitable estoppel must establish due diligence.

> Equitable estoppel, sometimes referred to as fraudulent concealment, is invoked in cases where the defendant takes active steps to prevent the plaintiff from suing in time, such as by hiding evidence or promising not to plead the statute of limitations. Application of equitable estoppel should be premised on a defendant's improper conduct as well as a plaintiff's actual and reasonable reliance thereon [internal quotation marks and citations omitted]. . . . To invoke

---

[19] 133 F.3d 388, 403 (6th Cir. 1998).

> equitable estoppel, a plaintiff must "demonstrate that his ignorance is not attributable to a lack of diligence on his part." *Netzer* [v. *Continuity Graphics, Inc.*]*,* 963 F. Supp. [1308,] []1316 [(S.D. New York 1997) ("A plaintiff seeking to invoke either doctrine [equitable tolling or estoppel] is also required to demonstrate that his ignorance is not attributable to a lack of diligence on his part.")].

*Bridgeport Music, Inc., et al. v. Diamond Time, LTD.,* 371 F.3d 883, 891 (6th Cir. 2004).

Like the district court, we are not persuaded that the facts construed in plaintiffs' favor support the application of either equitable estoppel or equitable tolling. No affirmative acts by defendants prevented plaintiffs from learning of a cause of action or prevented plaintiffs from timely filing suit on a cause of action of which they were aware. The basic facts that support the Egerers' RESPA claims were disclosed to plaintiffs in the Disclosure. Plaintiffs cannot demonstrate that they exercised due diligence to learn of available causes of action or to timely file within the statute of limitations based on known causes of action. Accordingly, like our conclusion above that the RESPA statute of limitations should not be equitably tolled in this case, we also conclude that defendants are not estopped from asserting the RESPA statute of limitations as to the Egerers' claims.

### 3.     Rule 56(f) Discovery and Timing of Merits Adjudication

Plaintiffs argue on appeal that the district court erred by: 1) not allowing additional discovery to obtain information that would have precluded defendants' statute- of-limitations defense; and 2) ruling on the statute-of-limitations defense during the class-certification phase of the case. For the reasons discussed below, we find no error in the district court's denial of plaintiffs' Rule 56(f) request for additional discovery or the timing of that court's ruling on defendants' motion for summary judgment.

**a.** *Rule 56(f) discovery*

Plaintiffs' request for additional discovery is governed by Rule 56(f) of the Federal Rules of Civil Procedure. If a party cannot present facts essential to its opposition to a motion for summary judgment, the court *may* order a continuance to allow discovery to be undertaken. *See* Fed.R.Civ.P. 56(f). Because Rule 56(f) makes the trial court's allowance of additional discovery discretionary, our standard of review is abuse of discretion. *Audi AG v. D'Amato,* 469 F.3d 534, 541 (6th Cir. 2006) (citing *Plott v. General Motors Corp.*, 71 F.3d 1190, 1197 (6th Cir. 1995)); *see also Glen Eden Hospital Inc. v. Blue Cross and Blue Shield of Michigan, Inc.*, 740 F.2d 423, 428 (6th Cir. 1984).

The affidavit required by Rule 56(f) to support a request for additional discovery must indicate the need for discovery, what material facts may be uncovered, and why the information has not been previously discovered. *Cacevic v. City of Hazel Park,* 226 F.3d 483, 488 (6th Cir. 2000) (citing *Radich v. Goode,* 886 F.2d 1391, 1393-94 (3d Cir. 1989)). In this case, plaintiffs' request for additional discovery on the estoppel issues was contained in a declaration of plaintiffs' counsel filed as an exhibit to plaintiffs' combined brief (Record Entry No. 50):

If given more time, additional discovery would be conducted in at least the following areas:

a)      Whether the doctrines of equitable tolling, waiver, estoppel, and other equitable and legal principles preclude the Defendants from asserting and enforcing any statutes of limitation against class members. *The Defendants have admitted in written discovery responses that the alleged wrongful conduct was never disclosed to plaintiffs. The sole deposition taken so far has already established that the Plaintiffs could not have discovered the wrongful conduct through the exercise of reasonable diligence. Additional evidence is expected to be adduced that corroborates such testimony.*

J.A. at 91 (emphasis added).[20]

Plaintiffs cite *Glen Eden Hospital*, *supra*, as a "factual setting directly analogous to the present case" in support of their argument on appeal that Judge Enslen erred by denying their request for additional discovery. *Glen Eden Hospital* was a "complex antitrust case" in which we concluded that the district court abused its discretion by not allowing Glen Eden Hospital to conduct further discovery before entering summary judgment. In that case, the additional discovery sought by Glen Eden Hospital was *identified with specificity and was not cumulative*, and the district court gave *no reason* for declining Glen Eden Hospital's request for further discovery. *Glen Eden Hospital*, 740 F.2d at 427.

In this case, plaintiffs opposed defendants' statute-of-limitations defense on equitable grounds. Plaintiffs' brief opposing defendants' summary judgment motion, and their declaration in support of additional Rule 56(f) discovery, clearly state that sufficient facts have already been discovered to preclude the entry of summary judgment on the statute-of-limitations defense and that additional discovery will corroborate those facts. The district court denied additional discovery on the grounds that the declaration failed to "demonstrate the additional discovery has the potential to raise a genuine issue of material fact, even when taken in a light most favorable to Plaintiffs." We agree, and conclude that the district court did not abuse its discretion in denying plaintiffs' motion for cumulative discovery before ruling on defendants' motion for summary judgment.

---

[20] This declaration requesting additional discovery to corroborate already-discovered facts that plaintiffs believe preclude summary judgment on the RESPA statute of limitations is consistent with plaintiffs' argument in their brief in opposition to defendants' summary judgment motion, to which this declaration was attached:

> Considering the allegations of the . . . Complaint, dismissal of the Plaintiff's [sic] claims under a 12(b)(6) standard is not appropriate. The Plaintiffs have alleged sufficient facts showing fraudulent concealment of the illegal payment, and an inability to discover the illegal conduct through the exercise of reasonable diligence. Construing all such allegations in the light most favorable to the Plaintiffs, it is clear that Plaintiffs' claims cannot be dismissed on the grounds of the statute of limitations defense. *In addition, a sufficient factual record has been developed at this state of the proceeding that precludes the entry of summary judgment for the Defendants on the issue of the statute of limitations defense.*

Record Entry No. 50, p. 24 (emphasis added).

**b.**        *Timing of merits adjudication*

Plaintiffs cite *Bentley v. Honeywell Int'l, Inc.*[21] in support of their argument that the district court erred by granting summary judgment on defendants' statute-of-limitations defense during the class-certification phase. However, the present case is distinguishable from *Bentley*. In *Bentley*, defendants opposed class certification because some plaintiffs may have been subject to a statute-of-limitations defense. *Bentley,* 223 F.R.D. at 485. Here, the statute of limitations was asserted by the defendants as a basis for dismissal of the suit and not as an argument against class certification. The class-certification question was never reached in this case because the Egerer plaintiffs' claims were time barred by the statute.[22]

In addition, plaintiffs contend that their hands were "prejudicially tied" in opposing defendants' motion for judgment on the merits because defendants objected to certain discovery requests as unrelated to class certification. However, even construing the facts in favor of plaintiffs, we cannot conclude on this record that plaintiffs were prejudiced by lack of discovery in responding to defendants' motion. As discussed, *supra,* plaintiffs believed that they had sufficient facts to preclude judgment on the statute-of-limitations defense notwithstanding defendants' objections to discovery that defendants contended was unrelated to class certification. Accordingly, we conclude that the district court did not err by ruling on defendants' motion during the class-certification phase of this case.

**D.        Boyink's RESPA Claim**

In order for there to be a violation of 12 U.S.C. § 2607(a) and 24 C.F.R. § 3500.14(b), three elements must be present: 1) a payment or a thing of value; 2) made pursuant to an agreement to refer settlement business; and 3) an actual referral. *Culpepper v. Irwin Mortgage Corp.,* 491 F.3d 1260, 1265 (11th Cir. 2007) (citing

---

[21] 223 F.R.D 471 (S.D. Ohio 2004).

[22] The district court denied as moot plaintiffs' motion for class certification after entering judgment for defendants. (J.A. at 56-57).

*Culpepper v. Inland Mortgage Corp.,* 132 F.3d 692, 696 (11th Cir. 1998)); *Edwards v. First American Corp.,* 517 F. Supp. 2d 1199, 1205 (C.D. Cal. 2007) (citing *Culpepper,* 132 F.3d at 696)); Paul Barron, Michael Berenson, & Dan Rosin, *Federal Regulation of Real Estate and Mortgage Lending*, § 2:45 (Dec. 2008); *see also* Joyce Palomar, *Title Insurance Law*, § 21:2 ("Only when referrals are motivated by an agreement that the referee will pay or kickback to the referrer a thing of value is RESPA § 8(a) [12 U.S.C. § 2607(a)] implicated.").

The district court held as a matter of law that Boyink did not have a cause of action against defendants under 12 U.S.C. § 2607(a), and therefore granted defendants' motion for summary judgment. The basis for that conclusion was that neither Boyink's real estate agent who recommended Woodland Title to Boyink, nor the agent's firm, were connected in any way to the defendants. Consequently, Judge Enslen concluded that Parsons's recommendation of Woodland Title to Boyink was not an "actual referral."

Plaintiffs do not allege or argue that Parsons or Prins Real Estate had any relationship with defendants or any agreement or eligibility with respect to the Marketing Dollars Program that plaintiffs allege violates RESPA. Further, plaintiffs have not alleged or argued on appeal that Parsons or Prins Real Estate received any benefit from Parsons's recommendation to Boyink regarding settlement services. Accordingly, the district court correctly found that Boyink does not have a cause of action against defendants under 12 U.S.C. § 2607(a), and we affirm Judge Enslen's dismissal of Boyink's RESPA claim.

## IV. Conclusion

After a *de novo* review and construing the facts in the light most favorable to the plaintiffs, we affirm the district court's decision granting defendants' motion for judgment as to the Egerer plaintiffs on the grounds that those claims are barred by RESPA's applicable statute of limitations, and as to Boyink for failure to state a claim under RESPA against defendants. Because the Egerer plaintiffs' RESPA claims are time barred, and Boyink failed to state a cause of action under RESPA, we affirm the district

court's denial of plaintiffs' motion for judgment on the pleadings.  In affirming the district court, we make no ruling as to whether defendants' practices, as alleged by plaintiffs, violate RESPA.