NOT RECOMMENDED FOR PUBLICATION
File Name: 16a0157n.06

No. 14-2630

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

HARRY L. HOLLINGSWORTH,      )
         )
     Plaintiff-Appellant,      )
         )
v.         )
         )   ON APPEAL FROM THE
FORD MOTOR COMPANY; INTERNATIONAL   )   UNITED STATES DISTRICT
UNION, UNITED AUTOMOBILE, AEROSPACE   )   COURT FOR THE EASTERN
AND AGRICULTURAL IMPLEMENT WORKERS   )   DISTRICT OF MICHIGAN
OF AMERICA, LOCAL 600,      )
         )
     Defendants-Appellees.      )

**FILED**
Mar 18, 2016
DEBORAH S. HUNT, Clerk

BEFORE:    CLAY and ROGERS, Circuit Judges, and THAPAR, District Judge.[*]

ROGERS, Circuit Judge. Harry Hollingsworth, a former Ford employee and member of

the International Union, United Automobile, Aerospace and Agricultural Implemental Workers

of America, Local 600 (UAW), appeals the district court's grant of summary judgment to Ford

and the UAW on his hybrid § 301 claim under the Labor Management Relations Act. He

contends that Ford wrongfully withheld funds from several checks relating to his retirement

package and the settlement of a prior grievance, and that the UAW breached its duty of fair

representation by failing to institute a grievance on his behalf. The district court granted

summary judgment to Ford and the UAW on the basis that the UAW did not owe Hollingsworth

a duty of fair representation. However, regardless of whether the UAW did or did not owe a

---

[*] The Honorable Judge Amul R. Thapar, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Hollingsworth duty of fair representation, summary judgment to Ford and the UAW was appropriate for another reason: Hollingsworth's suit was filed after the expiration of the six-month statute of limitations and is thus time barred.

Ford terminated Hollingsworth on May 18, 2009, for allegedly misusing company funds. R.58-2, at PageID# 2018. Ford claims that Hollingsworth fraudulently submitted duplicate cash receipts for reimbursement and made improper expenses on a company credit card in the amount of $6,140.36, R.51-5, at PageID# 1152, which Hollingsworth disputes, R.58-2, at PageID# 2020. Two days after Hollingsworth's termination, the UAW filed a grievance on his behalf pursuant to the Ford-UAW CBA. R.50-4, at PageID# 904. On August 25, 2010, the parties settled the grievance. R.57-3, at PageID# 1536. While the settlement agreement did not reinstate Hollingsworth as an active employee, it did award Hollingsworth $20,000 and the ability to be reinstated solely for the purpose of selecting a retirement separation package. *Id.* Upon his reinstatement to choose his retirement separation package, he elected to receive two additional cash payments, each with a pre-tax amount of $20,000. R.50-6, at PageID# 908 (Special Retirement Incentive); R.50-7, at PageID# 910 (Alternative Cash Payment). Hollingsworth's retirement became effective on September 1, 2010. R.58-2, at PageID# 2053.

Earlier, before Hollingsworth's termination, Ford had realized that it had overpaid Hollingsworth health benefits for his two children. R.51-4, at PageID# 1142-50. In 2008, Ford began collecting weekly payroll deductions from Hollingsworth's paychecks to recover the overpaid benefits. R.58-2, at PageID# 2060. At the time of Hollingsworth's termination, Ford claims that he still owed $2,403.23 in the overpaid health benefits. R.58-2, at PageID#2069-70.

While Hollingsworth's termination grievance was pending, clerical errors caused Ford to accidentally reinstate Hollingsworth as an active employee on two separate occasions. R.51-8, at

PageID# 1157-58; R.51-8, at PageID# 1156. As a result, Ford's system both times automatically generated benefits that are reserved for active employees, to which Hollingsworth was not entitled. R.51-8, at PageID# 1156-58. Ford states that Hollingsworth was issued multiple active-employee benefit checks and that the checks' stated gross amounts totaled $13,786.41. R.57-3, at PageID# 1594. Several of the active-employee benefit checks had money withheld from their gross amounts to repay Ford for the $6,140 in alleged credit card debt that led to Hollingsworth's termination. R.57-3, at PageID# 1548, 1550; *see* Ford's Br. at 7 n.1; Hollingsworth's Br. at 17.

After his grievance settlement and retirement became final, Hollingsworth received three checks from Ford (two retirement checks and one grievance settlement check). Each check stated a gross amount of $20,000. The first retirement check had $2,403.23 deducted from it to compensate Ford for the overpayment of health benefits to Hollingsworth's children. R.57-3, at PageID# 1593. Hollingsworth argues that these withholdings from his first retirement check were improper because, he claims, he was never overpaid health benefits. R.58, at PageID# 1937, ¶ 17 (denying R.50-1, at PageID# 868, ¶ 17); R.50-3, at PageID# 885. The second retirement check was not subject to any withholdings contested here. R.57-3, at PageID# 1593. The third check—the grievance settlement check—had $13,786.41 deducted from it to compensate Ford for the active-employee benefits that were accidentally paid out to Hollingsworth. R.57-3, at PageID# 1594. For the most part, Hollingsworth agrees that he was not entitled to the active-employee benefits. R.50-3, at PageID# 889; *but see* Hollingsworth's Br. at 18, 46 (arguing he was entitled to some of the SUB payments). However, because several of the active-employee benefit checks had funds withheld from their gross amounts to repay Ford for the alleged credit card debt, he complains that the fact that the full gross amounts of the

active-employee benefit checks were withheld from his grievance settlement check means that his grievance settlement was improperly reduced by the alleged credit card debt that led to his termination. In short, Hollingsworth primarily contests a sum of roughly $8,500—the amount that Ford withheld to recoup the allegedly overpaid health benefits plus the amount that Ford withheld to recoup the alleged credit card debt.

Hollingsworth claims that he contacted the UAW in April 2011, on the same day that he received the last of his three checks from Ford. R.58-2, at PageID# 2104. He states that UAW representatives informed him that they were investigating the deductions. R.58-3, at PageID# 2178. The UAW agrees that Hollingsworth spoke to a UAW representative over the phone and in person about the deductions and that the representative stated that he was looking into the matter. R.58-6, at PageID# 2489-91. Hollingsworth also emailed Ford directly in November 2012 and received a letter dated December 11, 2012, in which Ford detailed its reasons for each of the deductions. R.57-3, at PageID# 1593-94. On January 4, 2013—some twenty-one months after his initial discussions with the UAW—Hollingsworth sent a letter to the UAW requesting that it file a formal grievance on his behalf. R.57-3, at PageID# 1560-62. The UAW sent a letter refusing, on January 17, 2013. R.57-3, at PageID# 1571.

On March 12, 2013, about two months after he received the letter from the UAW refusing to file a grievance on his behalf, Hollingsworth sued Ford and the UAW in Michigan state court. R.1-1, at PageID# 6-28. Hollingsworth did not file an internal complaint or appeal with the UAW indicating that he was dissatisfied with its representation or challenging its decision not to file a grievance on his behalf before filing suit. R.58-2, at PageID# 2121-23. Hollingsworth's complaint raised a breach of contract claim against Ford and a hybrid § 301 claim under the LMRA against both Ford and the UAW. *Id.* Ford removed the suit to the

district court and filed a motion for judgment on the pleadings, which the district court converted to a motion for summary judgment. R.1, at PageID# 1-5; R.21, at PageID# 207. The district court entered partial summary judgment for Ford because Hollingsworth's breach of contract claim was preempted by the LMRA. R.25, at PageID# 246. The district court then denied summary judgment to Ford on the issue of whether Hollingsworth's hybrid § 301 claim was time barred, finding that a genuine issue of material fact existed regarding when Hollingsworth knew or should have known that the UAW was not going to file a grievance on his behalf. *Id.* at 247-48.

After conducting discovery, the UAW and Ford filed motions for summary judgment on the hybrid § 301 claim. R.50, at PageID# 850-64; R.52, at PageID# 1188-1200. The district court granted summary judgment to the UAW on the basis that the UAW did not owe Hollingsworth a duty of fair representation. R.87, at PageID# 4115-17. The district court did not reach the UAW's remaining arguments that Hollingsworth's claim is time barred, that he failed to exhaust internal union remedies before filing suit, and that he has no evidence that the UAW breached its duty of fair representation. *Id.* at 4115. Lastly, because a plaintiff with a hybrid § 301 claim is required to prove both that the union breached its duty of fair representation and that his employer breached the CBA, the district court granted summary judgment to Ford without analyzing whether Ford breached the CBA because the court had already concluded that Hollingsworth could not prevail on his claim against the UAW. *Id.* at 4117.

Regardless of whether or not the district court correctly concluded that the UAW did not owe Hollingsworth a duty of fair representation, summary judgment was appropriately granted to the UAW and Ford because Hollingsworth's suit is time barred. Hollingsworth's claim accrued

sometime in April or May 2011; however, he did not file suit until March 2013, which is far outside the six-month statute of limitations. The six-month statute of limitations that applies to hybrid § 301 claims is measured from the date on which the employee knew or should have known of the union's or employer's final actions constituting the alleged violations, whichever occurred later. *Robinson v. Cent. Brass Mtg. Co.*, 987 F.2d 1235, 1239 (6th Cir. 1993).

First, Ford's final action occurred in April 2011 when Hollingsworth received the last check showing withheld funds. Hollingsworth argues that Ford's final action was on December 11, 2012, when Ford sent a letter explaining why it made the deductions and "clearly repudiate[d] its obligations under the Grievance Settlement." Hollingsworth's Supp. Br. at 7. Hollingsworth appears to argue that prior to receiving the letter, he did not know that Ford would not pay the rest of the money that he claims is owed to him; however, when a company withholds funds from a check, a reasonable person does not expect that the company plans to issue a later check for the amount of those withheld funds. Thus, Hollingsworth knew, or should have known, that Ford breached the grievance settlement agreement by deducting funds from the checks—and that Ford was not planning on ever paying him those funds—when he received the last check in April 2011.

Second, Hollingsworth should have known of the UAW's final action—that it would not file a grievance on his behalf regarding the deductions—in April or May 2011, when the UAW failed to act within the short deadline prescribed by the CBA. A grievance under the Ford-UAW CBA begins when an employee discusses the issue with Ford or with Ford and a UAW representative together. R.19-2, at PageID# 188. If the issue remains unresolved and the union wishes to appeal the grievance further, the union must provide notice of the first oral discussion to Ford and initiate a second oral discussion with Ford within two working days. *Id.* at 188-89.

If the issue still remains unresolved and the union still wishes to appeal the grievance further, the union must so specify on a written "Record of Oral Discussion" form and send that form to Ford within two working days of the second oral discussion. *Id.* at 189. Ford has two more working days after that to send the "Record of Oral Discussion" form back to the union. *Id.* The union then has one week from that point to present a written grievance to Ford at a "Unit Grievance Meeting." *Id.* Any grievance that is not processed in accordance with the above procedure "shall be considered settled, and such settlement shall be final and binding." *Id.* at 188. Accordingly, Hollingsworth's grievance began in April 2011, when he first spoke to a UAW representative about the matter, and it was settled and binding once the UAW did not file a written grievance within roughly two weeks after those oral discussions.

A union member is responsible for knowing the contents of his CBA, *Shapiro v. Cook United, Inc.*, 762 F.2d 49, 51 (6th Cir. 1985), and Hollingsworth should have known that it was impossible for the UAW to file a grievance on his behalf after the CBA's deadline for doing so passed sometime in April or May 2011. Hollingsworth argues that until he received the January 17, 2013, letter in which the UAW refused to file a grievance on his behalf, he "did not have any reason to believe UAW was not pursuing upholding its duty of fair representation" because "between April 2011 and January 2013, UAW continuously represented to [him] that it was investigating Ford's breaches." Hollingsworth's Supp. Br. at 4. However, the fact that the UAW representatives told Hollingsworth that they were still "investigating" the matter after the deadline for filing the grievance had passed should not have given him comfort; instead, it should have indicated to him that the UAW either had no intention of filing a grievance or had committed a serious error by missing the deadline.

Hollingsworth also creatively argues that the initial oral discussion in the CBA's grievance procedure is "open-ended" and "does not have a deadline for its completion." Therefore, he contends, his request for a grievance never proceeded beyond the initial oral discussion stage and the two-working-day deadline for instituting a second oral discussion was never triggered. Hollingsworth's Supp. Br. at 5-6. Such a construction of the CBA's language contravenes the natural meaning of the provisions and is untenable. Further, when arguing to the district court on another issue, Hollingsworth agreed that "[u]nder any circumstances, the deadline to file said written grievance passed no later than May 2011." R.56, at PageID# 1282.

Hollingsworth is moreover not entitled to equitable tolling of the statute of limitations against either defendant. Equitable tolling due to fraudulent concealment applies when (1) the defendant concealed the conduct that constitutes the cause of action, (2) the defendant's concealment prevented the plaintiff from discovering the cause of action within the limitations period, and (3) the plaintiff exercised due diligence in trying to find out about the cause of action. *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 422 (6th Cir. 2009). The pursuit of internal union remedies—such as the filing of a grievance or the filing of an internal union appeal—can also toll the limitations period if the internal union process can afford the plaintiff at least some relief from a defendant. *Robinson*, 987 F.2d at 1242-43. In a hybrid § 301 claim, while the causes of action against both defendants accrue simultaneously, the limitations period does not necessarily begin to run against both defendants at the same time; rather, the limitations period can be tolled against one defendant while it runs against the other. *Id.* at 1239.

Hollingsworth is not entitled to tolling in his claim against Ford, because Ford did not fraudulently conceal any information from Hollingsworth and because any misunderstanding about the UAW's internal processes cannot be attributed to Ford. Hollingsworth claims only that

the UAW, and not Ford, concealed information from him, Hollingsworth's Supp. Br. at 8–9; thus, there is no basis for finding that the limitations period is tolled against Ford due to fraudulent concealment. Additionally, any misunderstanding about whether Hollingsworth's attempt to pursue internal union remedies could have been fruitful after April or May 2011—that is, whether the UAW could have successfully filed a grievance against Ford after April or May 2011—does not affect the running of the limitations period against Ford. The pursuit of a grievance can toll the limitations period against the employer where, as the case is here, the grievance process can provide the employee with complete relief from the employer. *Robinson*, 987 F.2d at 1243. However, the tolling against the employer ends when the grievance is closed. *Id.* Thus, the tolling against Ford that occurred upon Hollingsworth's initiation of the grievance process by having oral discussions with the UAW representatives ended in April or May 2011 when the grievance became "settled, . . . final[,] and binding" after the deadline to further pursue the grievance passed.

This conclusion is supported by *Robinson*. The employee in *Robinson* appealed the union's decision not to request arbitration with the employer through the union's internal appeals process, rather than immediately filing a § 301 suit, because she believed, based on the union's representations, that the internal appeals process could result in her reinstatement. 987 F.2d at 1243. The union's representations were incorrect, as the CBA provided that a union appeal could not result in reinstatement. *Id.* We held that the pendency of the internal appeals did not toll the statute of limitations in her claim against the employer because the internal appeal could not afford her relief from the employer. *Id.* We also reasoned that a misunderstanding caused solely by the union's misrepresentations cannot be linked to the employer's actions, statements, or policies. *Id.* Consequently, the limitations period began to run against the employer when the

union did not request arbitration within the timeline designated by the CBA. *Id.* Despite the union's misrepresentations, the employee should have known, based on the CBA, that the grievance procedure had been exhausted at that time. *Id.* Like the employee in *Robinson* who was deemed to know the terms of her CBA despite the union's misrepresentations, the UAW's representations to Hollingsworth that it was continuing to investigate the deductions does not remove his responsibility to know the terms of his CBA. Even though he was told by UAW representatives that the investigation was ongoing, he should have known that the only private dispute mechanism that could have provided him with relief from Ford was exhausted once the CBA's deadline to file a grievance passed in April or May 2011.

Similarly, Hollingsworth is also not entitled to equitable tolling in his claim against the UAW, because the UAW's statements did not preclude him from knowing whether or not it was still possible for it to file a grievance on his behalf and because he did not pursue any internal union remedies that might have tolled the limitations period beyond April or May 2011. Fraudulent concealment does not toll the limitations period against the UAW, because the UAW did not conceal its conduct regarding Hollingsworth's cause of action. For example, the UAW representatives never told him that they had filed a grievance when in fact they had not or hindered his access to the portions of the CBA that govern the grievance process. Instead, Hollingsworth claims that they told him that they were still investigating. Hollingsworth had access to the CBA and is deemed to know its contents; thus, the UAW representatives' statements that they were investigating the matter did not preclude him from determining, based on the terms of the CBA, whether or not it was still possible for the UAW to file a grievance after April or May 2011. Additionally, waiting until January 2013 to send a letter asking the

UAW to file a grievance about an incident that occurred in April 2011 is not acting with "due diligence."

Lastly, Hollingsworth did not pursue any internal union remedies that might have tolled the running of the limitations period against either the UAW or Ford after the UAW's final action occurred. The pursuit of an internal union appeal contesting the union's actions in handling a grievance can toll the statute of limitations, if the internal union appeal can afford the employee at least some relief against one or both of the defendants. *Robinson*, 987 F.2d at 1242. It is undisputed that Hollingsworth never filed an internal union appeal challenging the UAW's decision not to file a grievance on his behalf.[1] Therefore, the pursuit of an internal union remedy did not toll the limitations period beyond April or May 2011.

In sum, the six-month statute of limitations on Hollingsworth's claim began to run sometime in April or May 2011 and elapsed long before his March 2013 suit was filed. We may of course affirm a district court judgment on alternative legal grounds raised below, even though the grounds were not relied upon by the district court. *See, e.g.*, *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 548 (6th Cir. 1999). The judgment of the district court is accordingly affirmed.

---

[1] Because it is undisputed that Hollingsworth never filed an internal union appeal, we do not address whether the pursuit of such an appeal under the Ford-UAW CBA would have been sufficient to toll the statute of limitations against either defendant.

**CLAY, Circuit Judge, concurring.** I concur with the result reached by the majority opinion because Hollingsworth's own arguments before the district court concede that UAW's failure to file a written grievance by May 2011 constituted its "final action." I write separately to note that in the absence of that concession, I would find that the CBA did not adequately put Hollingsworth on notice that UAW's failure to file a written grievance constituted its final action.

The appropriate question is whether Hollingsworth "should have reasonably discovered that his claim had accrued by operation of the collective bargaining agreement." *Shapiro v. Cook United, Inc.*, 762 F.2d 49, 51 (6th Cir. 1985). The majority opinion answers in the affirmative: the CBA outlines a rigorous multi-step grievance process with stringent deadlines, and UAW's failure to file a written grievance by the applicable deadline operated as the union's final decision not to grieve Hollingsworth's claim. Had Hollingsworth been an active employee, I would agree. But by its terms, the CBA's grievance procedures do not apply to persons in Hollingsworth's position—that is, former employees grieving Ford's breach of a settlement agreement. The "First Stage" of the grievance process, for example, states that an aggrieved "employee" must "discuss the matter directly with his/her Supervisor or he may take it up with his District Committeeperson and Supervisor." R.19-2, at PageID# 188–89 (beginning the "Initial Oral Discussion" phase of the grievance process). Hollingsworth was a *former* employee; he had no "Supervisor" or "District Committeeperson" to whom to submit his grievance.

UAW—not unlike Hollingsworth—has made concessions supporting this interpretation of the CBA. In its motion for summary judgment before the district court, UAW argued that "[a]s a retiree, [Hollingsworth] was no longer entitled to the grievance process allotted to active

members of the UAW under the Collective Bargaining Agreement and the UAW Bylaws." R.50, at PageID# 863. UAW's brief before this Court likewise argues that "Hollingsworth is also not aware of any rights under the [CBA] that provides [sic] him the opportunity to file a grievance as a retiree." Def.'s Br. at 10. And UAW's counsel reiterated this point at oral argument, stating "[t]here is no provision in the collective bargaining agreement that allows for a retiree to file a grievance." Although these statements were made in the context of UAW's argument that it had no duty to represent Hollingsworth because he is a retiree, the statements nevertheless work against UAW by implying that the CBA had no grievance procedure available to former employees. Thus, I disagree with the majority opinion's reasoning and would find that a person in Hollingsworth's position would not "have reasonably discovered that his claim had accrued by operation of the collective bargaining agreement." *Shapiro*, 762 F.2d at 51.

In the absence of a grievance process identified to persons in his position, Hollingsworth reasonably relied on an alternative, *ad hoc* grievance procedure: first, he relayed his concerns to the union representative who had negotiated his wrongful termination settlement; second, he relied on that representative's repeated assurances that the matter was being investigated.[2] Because the CBA did not set out any deadlines for resolving the grievances of former employees, Hollingsworth's reliance on the representative's assurances were reasonable. And as a result of his reasonable reliance, Hollingsworth would not have known UAW had taken its "final action"—i.e., not filing a grievance on his behalf—until he received the letter from UAW stating as much in January 2013. At the very least, the lack of clarity in the CBA would make the reasonableness of Hollingsworth's reliance on the UAW representative's assurances an issue for the factfinder.

---

[2] Any disputes of fact regarding what Hollingsworth requested during his initial discussion with the union representative, or the assurances the union representative made in return, should be reserved for trial.

Unfortunately, in a brief before the district court, Hollingsworth himself conceded that the CBA's strict deadlines operated to render UAW's action "final" by May 2011. Indeed, in that brief, Hollingsworth adopts an interpretation of the CBA identical to the one offered by the majority opinion today. *See* R.56, at PageID# 1280–82. In light of that fact, I join the majority opinion in affirming the district court's judgment on the basis that Hollingsworth's claim is barred under § 301's sixth-month statute of limitations.